Electronically FILED by Superior Court of California, County of Los Angeles on 07/22/2022 11:52 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Gonzalez,Deputy Clerk

Case 2:22-cv-05042-JFM   Document 13-8   Filed 09/22/23   Page 1 of 43

**Exhibit**
E

**JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP**
Michael J. Saltz, Esq.  SBN 189751
msaltz@jrsnd.com
Elana R. Levine, Esq. SBN 234155
lani@jrsnd.com
1880 Century Park East, Suite 900
Los Angeles, CA  90067
Telephone:  (310) 446-9900
Facsimile:  (310) 446-9909

Attorneys for Cross-Defendants

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| MAP GROUP, LLC, a California limited liability company and DIGITAL IGNITION ENTERTAINMENT, LLC, a Delaware limited liability company, | Case No.: 21STCV37225 |
| | [Assigned for all purposes to the Hon. Curtis Kin] |
| Plaintiffs, | |
| v. | |
| TERRENCE HOWARD, an individual, MIRA HOWARD, an individual, UNIVERSAL BRIDGES, INC., a California corporation, and Does 1 through 100, inclusive, | **CROSS-COMPLAINT FOR:** |
| | 1. **BREACH OF CONTRACT;** |
| Defendants. | 2. **INTENTIONAL MISREPRESENTATION OF MATERIAL FACT;** |
| | 3. **NEGLIGENT CONCEALMENT OF MATERIAL FACT;** |
| UNIVERSAL BRIDGES, INC., a California corporation, TERRENCE HOWARD, an individual, MIRA HOWARD, an individual, | 4. **VIOLATION OF CIVIL CODE § 3344;** |
| | 5. **ACCOUNTING;** |
| | 6. **ABUSE OF PROCESS;** |
| | 7. **DECLARATORY RELIEF; and,** |
| Cross-Complainants, | 8. **VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200,** *et. seq.* |
| v. | |
| MAP Group, LLC, a California Limited Liability Company; MAP Production Services, LLC, a California Limited Liability Company; Massimiliano Musina, an individual; Digital Ignition Entertainment, LLC, a Delaware | **DEMAND FOR JURY TRIAL** |

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Case No.: 21STCV37225
File No.: 5.452.001

Limited Liability Company; Michael Clofine, an individual; Michael Coffey, an individual; UV RML NL ASSETS LLC, a Delaware Limited Liability Company; Farivar Law Firm, APC, a California Professional Corporation; Fahim Farivar, an individual; Taylor & Dodge LLC, a Foreign Limited Liability Company; Tyler W. Konney, an individual; and Roes 1 through 100, inclusive,

Cross-Defendants.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

## **THE PARTIES**

1.      Cross-Complainant Universal Bridges, Inc. ("UBI") is, and at all relevant times was, a California Corporation with its principal office located in Los Angeles County, State of California.

2.      Cross-Complainant Terrence Howard ("Terrence") is, and at all relevant times was, an individual residing in Pennsylvania.

3.      Cross-Complainant Mira Howard ("Mira") is, and at all relevant times was, an individual residing in Pennsylvania.

4.      UBI, Terrence, and Mira are collectively referred to herein as "Cross-Complainants."

5.      Cross-Complainants are informed and believe that Cross-Defendant MAP Group, LLC ("MAPG"), is, and at all relevant times was, a California Limited Liability Company with its principal office located in Los Angeles County, State of California.

6.      Cross-Complainants are informed and believe that Cross-Defendant MAP Production Services, LLC ("MAPPS"), is, and at all relevant times was, a California Limited Liability Company with its principal office located in Los Angeles County, State of California.

7.      Cross-Complainants are informed and believe that Cross-Defendant Massimiliano Musina ("Musina") is the Chief Executive Officer of both MAP and MAPPS, and is, and at all relevant times was, an individual residing in Los Angeles County, State of California.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

8.     Cross-Complainants are informed and believe that Cross-Defendant Digital Ignition Entertainment, LLC ("DIE"), is, and at all relevant times was, a Delaware Limited Liability Company with its principal office located in the City and State of New York. DIE advertises on its website that it also maintains offices, and conducts business, in the City and County of Los Angeles, State of California.[1]

9.     Cross-Complainants are informed and believe that Cross-Defendant Michael Clofine ("Clofine") is and at all relevant times was, an individual residing in the City and State of New York. Cross-Complainants are informed and believe that Clofine is the Manager of DIE.

10.    Cross-Complainants are informed and believe that Cross-Defendant Michael Coffey ("Coffey") is and at all relevant times was, an individual residing in the City of Lawrence, State of Kansas.

11.    Cross-Complainants are informed and believe that Cross-Defendant UV RML NL ASSETS LLC ("Relativity") is, and at all relevant times was, a Delaware Limited Liability Company with its principal office located in Los Angeles County, State of California.

12.    Cross-Complainants are informed and believe that Cross-Defendant Farivar Law Firm, APC ("FL") is, and at all relevant times was, a California Professional Corporation with its principal office located in Los Angeles County, State of California.

13.    Cross-Complainants are informed and believe that Cross-Defendant Fahim Farivar, Esq. ("Farivar"), is the Chief Executive Officer, Chief Financial Officer, Secretary, and sole Director, and Agent for Service of Process for FL, with a State Bar Number of 252153.  Cross-Complainants are further informed and believe that Farivar is, and at all relevant times was, an individual residing in Los Angeles County, State of California.

14.    Cross-Complainants are informed and believe that Cross-Defendant Taylor & Dodge LLC ("T&D") claims to be a Limited Liability Company with its principal office located in Los Angeles County, State of California. Cross-Complainants are currently unaware exactly in which state T&D was

---

[1] See https://digitalignitionent.com

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

1  formed. However, as of the date of the filing of this Cross-Complaint, Cross-Complainants are informed

2  and believe that T&D is not currently registered to legally conduct business in the State of California

3  despite its offices being located in the County of Los Angeles, State of California.

4      15.    Cross-Complainants are informed and believe that Cross-Defendant Tyler W. Konney

5  ("Konney"), is the president of T&D and is and an authorized agent of MAPG, and at all relevant times

6  was, an individual residing in Los Angeles County, State of California.

7      16.    The true names and capacities, whether individual, corporate, associate, or otherwise, of

8  ROES 1-100, inclusive, are unknown to Cross-Complainants, who therefore sue said Cross-Defendants

9  by such fictitious names. Cross-Complainants allege on information and belief that each of the Cross-

10  Defendants designated herein as a fictitiously named Cross-Defendant is, in some manner, responsible

11  for the events and happenings referred to, either contractually or tortuously, and/or that such fictitiously

12  named Cross-Defendants claim some right, title or interest to the property described herein below and/or

13  that such fictitiously named Defendants are liable in some manner for the obligations described herein

14  below. When Cross-Complainants ascertain the true names and capacities of ROES 1-100, Cross-

15  Complainants will amend this Cross-Complaint accordingly.

16      17.    Cross-Complainants are informed and believe that at all relevant times mentioned herein,

17  Cross-Defendants, including those fictitious named as ROES 1 through 100, in doing the things alleged

18  in this Cross-Complaint, acted in concert and conspired with or aided and abetted each other to do the

19  acts complained of in this Complaint, and that each Cross-Defendant acted, at all times, as the agent,

20  partner, co-conspirator, co-venturer, joint venturer, representative or employee of the remaining

21  Defendants and were acting within the scope and purpose of that agency, partnership, joint venture or

22  employment, such that the acts and conduct of each Cross-Defendant, including those named herein as

23  ROES, was known to, authorized by and ratified by the other Cross-Defendants. Cross-Complainants

24  are further informed and believe that each of the Cross-Defendants named herein engaged in wrongful

25  conduct that is a cause of Cross-Complainants' damages, and are responsible in some manner for the

26  damages sustained by Cross-Complainants.

27  ///

28  ///

Case No.: 21STCV37225
File No.: 5.452.001

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

## JURISDICTION

18.     The events and circumstances, which are the subject of this lawsuit, occurred within the County of Los Angeles, State of California. Moreover, the agreements, representations, duties, and promises alleged herein were made in the County of Los Angeles, State of California.

## GENERAL FACTUAL ALLEGATIONS

### A.  TRIUMPH'S INITIAL PRODUCTION

19.     "Triumph" is a movie starring actor RJ Mitte ("Mitte"), a Screen Actor's Guild union ("SAG") member known for his role on the television show "Breaking Bad." "Triumph" is about a high school student with cerebral palsy who strives to be a wrestler. It is based on the life story of its screenwriter and producer, Cross-Defendant Coffey. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "2"** is a true and correct copy of an Agreement dated May 19, 2015 between RFMIII Services, Inc. and Triumph Productions, LLC to engage Mitte as an actor on "Triumph". Said Agreement is incorporated herein by this reference and contains detailed terms and representations, including, but not limited to terms engaging Mitte pursuant to SAG rules and agreements and warranting that Producer Triumph Productions, LLC "represents and warrants that it is (or will be, from the beginning of principal photography until the initial theatrical release of the Picture) a signatory to the SAG Basic Agreement." This confirms that, at all relevant times, "Triumph" was represented to the actors therein that it would be SAG compliant.  Ultimately, however, Cross-Complainants are informed and believe that no producer of Triumph ever became a signatory to the SAG Basic Agreement or otherwise took all necessary steps to make "Triumph" SAG compliant.

20.     In or about 2015, Mitte's talent manager, Melinda Esquibel ("Esquibel"), was also a Co-Producer and Executive Producer of "Triumph" along with disgraced-securities-broker[2] Clofine through

---

[2] Cross-Complainants are informed and believe that, after failing to cooperate in an investigation against himself, Clofine was expelled as a broker by the Department of Market Regulation NASD and has been barred from ever again holding a securities license. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "1"** is a true and correct copy of Michael Clofine's NASD Letter of Acceptance, Waiver, and Consent to the Department of Market Regulation in which Mr. Clofine became forever

his company, DIE, David Levy ("Levy"), Julian Raymond and various others. In or about September 2015, production of "Triumph" shut down after Esquibel discovered that Levy and other producers had been falsely telling the movie's investors, cast, and crew that Kevin Spacey had signed a contract to play the "cameo"[3] role of "Coach Cutting." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "3"** is a true and correct copy of correspondence Esquibel received as a producer of "Triumph" regarding Kevin Spacey not actually being attached to "Triumph." Said document is incorporated herein by this reference. It was subsequently determined in litigation that Levy, the then producer of "Triumph": fabricated a Kevin Spacey "Triumph" contract to play the cameo role of "Coach Cutting;" forged Kevin Spacey's signature thereto; and used it to defraud investors. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "4"** is a true and correct copy of the *Poteet,* et al. v. *Levy,* et al. Second Amended Complaint, Case No. 15-1264-BC, In the Chancery Court For Davidson County, Tennessee Twentieth Judicial District. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "5"** is a true and correct copy of the judgment from *Poteet,* et al. v. *Levy,* et al. Case No. 15-1264-BC. Said exhibits are incorporated herein by this reference.

21.   During said litigation, Harvey Keitel was offered $550,000 in fixed compensation for seven days of work to play the cameo role of "Coach Cutting." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "6"** is a true and correct copy of an email Esquibel sent to Mitte on December 18, 2015 memorializing said offer and advising Mitte of the status of the "Triumph" production at that time. This exhibit is incorporated herein by this reference. This offer to Harvey Keitel was made despite the fact that the Nashville film crew had not been paid and were owed back wages. See Exhibits 4, 5, and 6.

---

barred from holding a securities license and/or in "all capacities from associating with any [NASD] member firm" This document is incorporated herein by this reference and is otherwise publicly available on the FINRA's official website at:
https://www.finra.org/sites/default/files/fda_documents/2006004117101_FDA_D576496%20%282019-1562192356910%29.pdf .
[3] Cameo is defined as: "A small but noticeable part in a movie or play, performed by a famous actor." See https://dictionary.cambridge.org/us/dictionary/english/cameo

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

22.     Eventually, the production went into bankruptcy, wherein it was purchased and subsequently transferred to MAPPS. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "7"** is a true and correct copy of the Order Granting Motion to Approve Sale of Assets Free and Clear of Liens, Claims and Interests in the bankruptcy case of *In Re David Brown Levy*, Case No. 1:15-bk-14036-MT. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "8"** is a true and correct copy of MAP Settlement and Release of Claims that was sent to artists in order to secure releases after bankruptcy. Said exhibits are incorporated herein by this reference. Despite continuing with the production of "Triumph," the post-bankruptcy producers did not pay the Nashville film crew their back wages.

**B.   TERRENCE HOWARD MEETS CLOFINE ON "SELFIE."**

23.     Cross-Complainant Terrence is, amongst other things, an Academy Award nominated actor and member of SAG. He is known for his roles in the hit series "Empire," and critically acclaimed films such as "Crash," and "Hustle & Flow," a movie for which he was nominated for Best Actor.

24.     Terrence is under an exclusive Employment Contract with his loan-out company, UBI. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "9"** is a true and correct copy of a redacted version of said Employment Contract, which is incorporated herein by this reference.

25.     UBI is solely owned and operated by Mira, and as such, Mira is the only person with the authority to contractually bind UBI. See Exhibit "9".

26.     In or about April 2017, Terrence was offered a cameo role in a SAG movie titled "Selfie," starring Terrence's and Mira's friend, Anita Briem, at the reduced rate of $100,000 fixed compensation and 5% of the "Producer's Share of Net Profits" as contingent compensation. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "10"** is a true and correct copy of the offer for Terrence to act in "Selfie," which is incorporated herein by this reference.

27.      Clofine is a co-producer on "Selfie," and as such, met Terrence thereon.

28.     Coincidentally, Cross-Complainants are informed and believe that the union film crew on "Selfie" had also not been paid for their work, and ultimately shut down Clofine's production by going on strike. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "11"** is a true and correct copy of an article from Deadline dated June 13, 2018 entitled "IATSE Leads Indie Film

Crew On Strike In Puerto Rico Article, which is incorporated herein by this reference. Terrence informed Clofine that not paying a film crew was unacceptable and implored Clofine to remedy the situation. Clofine promised Terrence that he would fully rectify the situation. Specifically, Terrence received a said promise from Clofine in a June 20, 2018 text message sent from Clofine's cellphone number that said: "By next week i [sic] will have all cast paid, hotel paid in full, cast caught up and restriking the deal and ownership…Crew paid next week too." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "12"** is a true and correct copy of said June 2018 text trail between Terrence and Clofine, which is incorporated herein by this reference.  Cross-Complainants are informed and believe that Clofine ultimately never honored said promise to pay said cast and crew.

### C.   CLOFINE PURSUES TERRENCE HOWARD TO PLAY THE CAMEO ROLE OF "COACH CUTTING" IN "TRIUMPH."

29.     During conversations about "Selfie" in or about June 2018, Clofine solicited Terrence's involvement in "Triumph." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "13"** is a true and correct copy of an email dated July 13, 2018 Terrence received from Clofine's known email address, and which is incorporated herein by this reference. In said email, Clofine stated, "Whatever capacity you would like to be involved, we would love to have you."

30.     During said solicitation, Clofine represented to Terrence that "Triumph" had partnered with a Cerebral Palsy charity, and that if Terrence would agree to take on the cameo role of "Coach Cutting," part of Terrence's compensation would be a tax credit of *all* the donations made to said Charity in addition to moneys paid as fixed compensation. Thus, after reviewing the script for "Triumph," and in reliance upon Clofine's representations regarding compensation, Terrence texted Clofine on June 23, 2018: "I like the script. I'm in. Let's find a way to make it work." Clofine responded back: "I will Promise [sic] the public relations for you will be so positive!!!!!! All donations will be made in your name!" Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "14"** is a true and correct copy of said text messages dated July 2018 between Terrence and Clofine, which is incorporated herein by this reference.

31.     On or about August 20, 2018, Clofine met with Terrence and Mira to further discuss compensation to UBI in exchange for Terrence playing the cameo role of "Coach Cutting." Clofine

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Case No.: 21STCV37225
File No.: 5.452.001

CROSS-COMPLAINT

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

offered $150,000 fixed compensation for Terrence to perform in "Triumph" plus a $500,000 donation to said charity in a lawful manner to provide UBI a tax credit/deduction for said amount. However, Clofine explained that the cash portion of the fixed compensation for Terrence playing "Coach Cutting" would be paid through a means yet to be determined so that Clofine could misleadingly create a positive public relations event for the producers by claiming Terrence was "donating" his services and income to the movie for the charity. Terrence and Mira expressed concern that such a contract could run afoul of SAG minimum requirements, as Clofine had represented that he was aware Terrence could not act in "Triumph" if the production was not SAG compliant. Clofine then confirmed to Cross-Complainants that "Triumph" would be SAG compliant, and that Cross-Complainants did not need to worry about SAG. As such, the meeting ended with all involved agreeing to figure out the details on how to pay UBI the offered fixed compensation. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "15"** is a true and correct copy of text messages between Terrence and Clofine confirming that Cross-Complainants were open to further discussions. ("Mira and I both agree that triumph is something that we should be a part of and we are open to further discussion regarding the other possibilities."). Said exhibit is incorporated herein by this reference.

32.     Thereafter, on September 25, 2018, Clofine, on behalf of DIE, sent Terrence a Summary of Terms sheet and a cover email. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "16"** is a true and correct copy of said September 25, 2018 email and Summary of Terms sheet, which is incorporated herein by this reference. The Summary of Terms lacked all of the essential elements of a standard "Short Form" agreement and stated that compensation would be "Mutually Agreed Upon" for a six-day shoot for Terrence to take on the role of Coach. The email likewise memorialized the previous conversation about creating a "huge 'feel good' public interest" story about Terrence donating his services to make everyone look like "saints." Cross-Complainants subsequently refused to sign said Summary of Terms.

33.     In or about March 2019, Clofine met with Terrence and Mira to discuss UBI's compensation structure on "Triumph." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "17"** is a true and correct copy of text messages between Terrence and Clofine from February to March 2019 regarding said meeting. Attached to the Appendix of Exhibits to the Cross-Complaint as

Exhibit **"18"** is a true and correct copy of text messages between Terrence and Clofine from March 21, 2019 confirming said meeting. Said exhibits are incorporated herein by this reference.

34.    At said meeting, Clofine represented that UBI would be paid the promised fixed compensation of $150,000, and ultimately given a tax credit for $500,000 as soon as investors learn that Terrence is attached to "Triumph" for the role of "Coach Cutting." Clofine kept explaining that he needed written confirmation of said attachment in order to "make the money flow" in from investors so that UBI can be paid. Clofine continued to repeat this mantra in his subsequent messages. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "19"** is a true and correct copy of an email dated March 21, 2019 sent to Mira from Clofine. Said email confirmed that the "Triumph Agreement" would be emailed to Mira "soon." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "20"** is a true and correct copy of a text message from Clofine to Terrence stating: "I am emailing proposal over… Will need it signed and money will flow in once executed." Said exhibits are incorporated herein by this reference. Based thereon, Clofine explained that the contract he would be sending would not be final, and that various necessary items would be intentionally left out and to be addressed in a "long form" contract or a concurrent contract for "consulting" services to cover the now agreed-upon fixed compensation.

35.    On or about March 28, 2019, Clofine sent Mira an email with a proposed Triumph Agreement ("TA") attached. A true and correct copy of said March 28, 2019 email and attachment is attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "21"**, and is incorporated herein by this reference. Said emails continued to push the "press" angle on the donation of services, and that Plaintiffs "need Howard's signature to get the funds flowing for the film." That same day, Clofine sent Mira another email from his email account with a different version of the TA attached thereto. A true and correct copy of said March 28, 2019 email and attachment is attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "22"**, and is incorporated herein by this reference.  Mira responded to Clofine's emails that the TA needed to be with UBI and not Terrence. A true and correct copy of said email is contained within the email trail attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "23"**, which is incorporated herein by this reference.

36.    Cross-Complainants refused to sign said TA.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

37.     Although said TA did not contain any waiver of rights or releases so that UBI would be assured security for receiving the promised compensation, Clofine had attempted to lower the offered fixed compensation to be paid in the Consulting Agreement ("CA") to $75,000.00. As such, on March 31, 2019, Terrence sent Clofine a text reminding him that the "consulting" fee recently quoted was incorrect by stating: "that consultation I believe was twice that quoted. I distinctly remember that small portions [sic] because it percolated with me. I'm sure that if you jog your memory it'll come back to you." Clofine responded to Terrence saying: "**Ok**. We will meet Wednesday and lock this down." Attached to the Appendix of Exhibits as **Exhibit "24"** is a true and correct copy of the March 31, 2019 text messages between Terrence and Clofine regarding CA compensation amounts, which is incorporated herein by this reference. Clofine then agreed to meet with Terrence and Mira in person in Las Vegas, and repeated his mantra that the quicker UBI signs, the quicker they get paid their promised fixed compensation by writing: "Quick sign quicker $". Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "25"** is a true and correct copy of text messages between Terrence and Clofine from April 2, 2019 through April 3, 2019 regarding said meeting in Las Vegas, and which is incorporated herein by this reference.

38.     Terrence met with Clofine alone in Las Vegas on April 3, 2019, as Mira was unavailable. There, Clofine again told Terrence that he needed the proposed TA signed or else there would be no money released that would allow Clofine and DIE to pay UBI on the proposed CA. Clofine said, since Mira was not there, he needed Terrence to sign the TA so he could get the money to pay UBI. Clofine also represented that, since Mira was not there, Clofine would email the CA to Mira to sign for UBI to lock in the promised fixed compensation that was being exchanged for Terrence's acting services through the CA. Terrence then reminded Clofine that he could not work "pro bono" pursuant to SAG rules and that he did not have the authority to sign on behalf of UBI. Clofine represented the TA stated that the rest of the terms will be negotiated later, including releases and SAG requirements, and as such UBI and Terrence were more than protected. Clofine stated the production was desperate to get the money in to start filming and the only thing that the TA required of Terrence was to show up for filming in the next few days. *Id*. Clofine further stated that it would be better to have Terrence's signature on the

TA rather than Mira's for press purposes. Clofine then slid the TA to Terrence to sign, and said: "This is for the money."

39.     Based upon Clofine's representations, the protections afforded by the omitted waiver and release terms in the TA, the representation that "Triumph" would be a SAG compliant production, and the fact that the TA contains the written obligation that the parties must negotiate a "long form" agreement memorializing all of the missing terms, Terrence signed the TA with the phrase "All rights reserved" embedded in his signature. Attached to the Appendix of Exhibits to the Cross-Complaint **Exhibit "26"** is a true and correct copy of the signed TA, which is incorporated herein by this reference.

### D.  CLOFINE AND DIE FAIL TO PAY DEFENDANTS AS PROMISED

40.     The next day, on April 4, 2019, Clofine sent Mira an email and proposed CA dated April 3, 2019. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "27"** is a true and correct copy of the April 4, 2019 email, along with the CA that was attached thereto. Said exhibit is incorporated herein by this reference. Notably, the CA is dated the same day that Cross-Defendants have claimed Terrence signed the TA on behalf of UBI. However, Clofine did not have Terrence sign the CA when he was with him on April 3, 2019. Rather, Clofine sent the CA exclusively to Mira instead. This confirms Clofine had direct knowledge only Mira could sign a contract on behalf of UBI.  Nevertheless, said CA was again for the wrong amount. And what was even more underhanded, the payments in the CA were scheduled to be made well after Terrence would be done filming "Triumph", which would be unacceptable even if the CA were in the right amount. As such, Mira refused to sign it and demanded a corrected contract, which never came.

41.     On April 19, 2019, Terrence had to text Clofine that he is not allowed "to step on set without all of the things that were discussed [being] delivered." Clofine texted back: "I'll have today. U have my word[.] I'll be over at 330pm". Clofine then texted Terrence a "thumbs up" emoji next to a "money bag" emoji. Attached to the Appendix of Exhibits to the Cross-Complainant as **Exhibit "28"** is a true and correct copy of said April 19, 2019 text messages between Terrence and Clofine, which is incorporated herein by this reference.

42.     In response, and instead of claiming that Terrence was supposed to be working "pro bono" under the TA, or claiming that Cross-Complainants were extorting the producers of "Triumph,"

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

both Clofine and Musina made multiple promises of payment. Instead of full payments coming in, Clofine and Musina unilaterally split the payments up into smaller amounts to be wired after the first postdated check did not go through, and with said wires also conveniently failing to go through. As such, Terrence accused Clofine of a "bait and switch." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "29"** is a true and correct copy of a text message trail between Terrence, Clofine, and Musina from April through May 2019. Said exhibit is incorporated herein by this reference. In said text messages, Terrence confirmed that he was just an employee of Universal Bridges and therefore cannot speak for it, or bind it into any agreements. Additionally therein, Musina stated on May 10, 2019: "You'll be receiving one wire today and another tmrw." Terrence then respond on May 11, 2019: "nothing came in." Musina then stated, "it will be there Monday." Then on May 14, 2019, Musina stated, "wire got kicked… there is no bait and switch."

43.     Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "30"** are true and correct and copies of text messages between Clofine and Terrence, which are incorporated herein by this reference.  In said text messages, on April 23, 2019, Clofine stated, "starter check …presented a small problem. I am trying to make it right by wiring both amounts… I am sure Mira is upset and I am just trying to make up for the confusion….I owe you one or two or three!!!!" Then on May 10, 2019, Clofine stated in a text message to Terrence, "It will be in account by Monday." On May 14, 2019, Terrence then stated, "wire was kicked back."

44.     Based upon the promises that payments were forthcoming, in April 2019, Cross-Complainants agreed to film Terrence's portion of "Triumph." However, Cross-Complainants continued to assert their security measures and refused to execute any releases. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "31"** is a true and correct copy of an email that was sent to Mira from line producer Blair Skinner requesting Terrence sign a "Results and Proceeds" release.  Said exhibit is incorporated herein by this reference.

45.     In May 2019, amongst texting about failed wire attempts, Clofine again tried to limit the upfront fixed compensation to $75,000. See **Exhibit "30"**. In response, Terrence texted: "I don't like the

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

bait and switch. And it was supposed to be [150][4], so you're short to boot." In response, Clofine texted back:

> "Come on bro. We threw a bunch of numbers out. Let me get this piece to u to close out. I am sorry I was trying to wire it prior to May 15th (date on check) thanks man. Sorry for the inconvenience".

*Id*.[5] Ultimately, Clofine and Musina only paid UBI $75,000 of the promised $150,000 upfront fixed compensation, and none of the $500,000 tax credit.

46.     To make Cross-Complainants further doubt the veracity of Clofine, Musina, or anyone at DIE, MAPG or MAPPS, in or about October 2019, Cross-Complainants received an email from Esquibel stating that the producers of "Triumph" never paid the Nashville film crew. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "32"** is a true and correct copy of said October 9, 2019 email from Esquibel.

47.     Disturbed by this news, Terrence drafted an email to be sent to the Nashville cast and crew that stated:

> "Please accept my sincerest apology for working on a film that took advantage of the Nashville crew as "Triumph" did. Like yourselves, I was conned into working on a project that I was told the proceeds were going to benefit an under funded charity. No one informed me of the problems associated with this production. No one informed me about the lives of the crew that had been left shattered as a result of trusting a con man! I wish that our community shared more of our horror stories and perhaps we could prevent our talents from being preyed upon by predators who feed upon the dreams of the innocent!

Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "33"** is a true and correct copy of Terrence's October 7, 2019 email to the Nashville cast and crew.  Having apparently struck a nerve, Clofine, Musina, and Mitte attempted to silence Esquibel by sending her a cease and desist letter. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "34"** is a true and correct copy

---

[4] Terrence's text contains a typographical error when he texted "100," as confirmed when he previously stated in prior communications that the amount was supposed to be double $75,000. See **Exhibit "24"**.

[5] If Terrence was truly working pro bono, then there would be no need to throw numbers about.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

of said October 8, 2019 cease and desist letter sent to Esquibel, which is incorporated herein by this reference.

48.     Thereafter, in or about late 2019, the producers learned that they needed Terrence to cooperate with a process called Audio Dialogue Replacement ("ADR") and read a few lines to be recorded and added to the Movie "Triumph." As such, on or about January 18, 2020, Musina reached out to Mira via a text message.  Because Musina knew the TA failed to memorialize UBI's compensation properly, and because the TA failed to include any releases, Musina started said text messages by attempting to entice a response from Mira by first stating that "We have to write a new draft of a deal with Terrance." Musina also texted Mira that he needs Terrence to perform an hour of ADR. Mira responded the same day that Terrence would not be available to do the ADR until June pursuant to his prior schedule, but that Terrence could do the ADR sooner if he was able to do it from his home.  To be certain, the TA confirms at section 7 therein that all services to be performed by Terrence that are not scheduled consecutively with principal photography are subject to Terrence's prior professional availability. Thereafter, on or about February 26, 2020, Musina sent Mira an email asking for Terrence provide 20 to 30 minutes of ADR of a few of Terrence's lines in "Triumph" in a sound studio, because video syncing cannot be done at home. Therein, Musina also acknowledged again that the TA was not a complete and final agreement and did not express all of the terms of compensation upon which the parties had previously agreed. Specifically, Musina wrote in said email: "Also, I believe we need to get a final agreement in place for you and Terrence' [SIC] backend profits of [SIC] Triumph. Lets [SIC] discuss when you have a chance."

49.     At this point, Cross-Complainants were figuring out that Clofine and Musina were con artists. However, Cross-Complainants wished to remain professional and provided the requested ADR. Thereafter, Cross-Complainants are informed and believe that they had no further substantive communications of any kind with Clofine or Musina, or anyone at DIE, MAPG or MAPPS for any reason until approximately March 2021 – as discussed below. To be certain, after said contact, neither Clofine nor Musina, or anyone at DIE, MAPG or MAPPS ever bothered to contact Cross-Complainants to fulfill the promises made in the TA, including, but not limited to:

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

A) To arrange for "First class transportation" pursuant to TA section 12.a at all points of travel identified in the TA – including to premiers and festivals and at all times Terrence was working on "Triumph";

B) To request and/or offer Cross-Complainants the opportunity to provide meaningful consultation over all photos and likeness of Terrence pursuant to TA section 12.b.i;

C) To request and/or offer Cross-Complainants the opportunity to provide reasonable approval over material changes to Terrence's role pursuant to TA section 12.b.ii;

D) To provide a DVD copy of the Picture pursuant to TA section 12.e;

E) To inform Cross-Complainants about, and to provide 2 invitations to, all major premiers and major film festivals at which "Triumph" was screening pursuant to TA Section 12.f;

F) To negotiate in any manner the remaining terms of the TA pursuant to TA Section 12;

G) To provide and/or negotiate a long form acting services agreement between Terrence and the production company for "Triumph" pursuant to TA Section 12; and/or

H) To provide and/or negotiate, pursuant to Musina's February 26, 2020 email, "to get a final agreement in place for [Cross-Complainants'] backend profits [on]Triumph."

50.     Rather, on or about March 27, 2020, Coffey reached out to Mira to try to smooth things over about the unprofessional nature with which Terrence was treated on set and by Clofine and Musina. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "35"** is a true and correct copy of Coffey's March 27, 2020 email, which is incorporated herein by this reference.

51.     Coffey again contacted Mira by email on or about July 24, 2020 to find out if "Terrence was paid in full for his performance in TRIUMPH." Mira responded that payment was received, but "it was difficult getting paid and we were not paid what we [were] originally offered." Mira also confirmed that they have "cut off all ties with [Clofine] and everyone else from the group," and warned Coffey "they cannot be trusted." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "36"** is a true and correct copy said email trail between Mira and Coffey, which is incorporated herein by this reference. In any event, Coffey's email confirms in writing that the producers of "Triumph" always understood that UBI's fixed compensation was not intended to be exclusively pro bono, but rather was based on an actual monetary figure. As such, Cross-Complainants previous demand for payment on the

CA was not extortion, as Musina and Clofine have falsely represented, but were moneys to which UBI was entitled pursuant to Clofine's promises and representations.

## E. CROSS-DEFENDANTS KNOWINGLY LICENSE, ADVERTISE, AND RELEASE "TRIUMPH" WITHOUT OBTAINING WAIVERS OR CONSENT FROM DEFENDANTS

52. The purported TA contains none of the customary and required "results and proceeds" language needed to memorialize Cross-Complainants' waivers and consent to use Terrence's name and likeness for commercial exploitation. This was intentional to make sure that Cross-Complainants had some protection in the event that Clofine, DIE, Musina, and MAPG breached their promises. Such is memorialized in the TA by it specifically stating: "All other terms and conditions shall be negotiated in good faith," and by Terrence specifically writing on said agreement: "All rights reserved."[6] What is more, said representation by Clofine and Musina was false, as they did not attempt to negotiate the rest of said agreement, in good faith or otherwise, because they actually never intended to actually honor their promises under the TA or complete the formation of the TA. By way of example, and not limitation, as stated above, Terrence is a member of SAG and can therefore not act in productions that are not SAG compliant. Clofine and DIE (through Clofine) promised Terrence that additional terms would added to the TA regarding the production being SAG compliant. However, none of the Cross-Defendants took the necessary steps to make "Triumph" SAG compliant, which therefore in turn would prevent Cross-Defendants from being able to sign any releases of any kind – including a "results and proceeds" release – to use Terrence's name or likeness in any fashion related to "Triumph."

53. Despite knowing that they never obtained a signed release or consent from Cross-Complainants, Cross-Complainants are informed and believe that in or about November 2020, Musina, MAPG and MAPPS hired T&D and Konney as the sales agents for "Triumph" and instructed T&D to

---

[6] The intentional exclusion of the "results and proceeds" waiver language regarding Terrence's name and likeness is also memorialized in two versions of the proposed COE. See Ex. 41", ("the principal terms of the agreement [] did not contain certain standard language required by the distributors of the Picture."), and redline Ex. 53, Ex. D; 54, Ex. D.("the principal terms of the agreement [] did not contain certain provisions required by the distributors of the Picture.").

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

sell "Triumph" to domestic and foreign distributors by exploiting Terrence's name and likeness. Such is confirmed by T&D's own website, wherein they market "Triumph" almost exclusively upon Terrence's name and image even though Mitte is the lead in the film, and Terrence's role in "Triumph" was considered a cameo.







See https://tayloranddodge.com . At no time were Cross-Complainants ever consulted about the use of Terrence's images as set forth above.

54.     Cross-Complainants are informed and believe that, at all relevant times, T&D and Konney knew or should have known that Cross-Complainants had not signed any releases for Terrence's name and/or likeness to be used for commercial gain, and that "Triumph" was not a SAG compliant film. Nevertheless, T&D and Konney advertised "Triumph" and solicited domestic and foreign distribution agreements with various companies predominantly based upon the use of Terrence's name. In such

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

solicitations, T&D, Konney, Musina, MAPG and MAPPS falsely represented that they possessed written releases from Cross-Complainants to commercially use and exploit Terrence's name and likeness in association with "Triumph", that MAPPS would handle the calculation and accounting of all SAG obligations, and that MAPPS would provide the distributors such calculations for the distributor to make any required payments to SAG.

55.    Cross-Complainants are informed and believe that, based upon such false representations by T&D, Konney, Musina, MAPG and/or MAPPS, and based upon the unauthorized commercial exploitation of Terrence's name and likeness, T&D, Konney and MAPPS sold "Triumph" to Cross-Defendant Relativity for domestic distribution. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "37"** is a true and correct copy of the UV RML NL ASSET LLC Triumph Exclusive License Agreement for domestic distribution of "Triumph." Said exhibit is incorporated herein by this reference. By way of example, and not limitation, Paragraph 6(d) confirms some of said false representations regarding "Triumph" being SAG compliant, and Paragraph 14 confirms some of the false representations with regard to possessing written "results and proceeds" releases from Cross-Complainants.

56.    Additionally, Cross-Complainants are informed T&D and Konney, on behalf of MAPG, commercially used and exploited Terrence's name and likeness without consulting him and without his consent to enter into a foreign distribution agreement Attached to the Appendix of Exhibits as **Exhibit "38"** is a true and correct copy of the IFTA International Multiple Rights Distribution Agreement for international distribution of "Triumph." Said exhibit is incorporated herein by this reference. Therein, similar false claims as stated above were made in Paragraph 18 and Schedule 16.1 therein, and as confirmed by Paragraph 18(b).

57.    Cross-Complainants are informed and believe that, after entering into said distribution deals, Cross-Defendants Musina, Clofine, MAPG, MAPPS, T&D, Konney, and Relativity all knew or should have known that they did not have proper releases from Cross-Complainants to commercially use and exploit Terrence's name and image, said Cross-Defendants had Musina reach out to Mira on or about March 14, 2021 via email.  Said email contained a proposed Certificate of Engagement ("COE"). Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "39"** is a true and correct copy

of said March 14, 2021 email attaching the proposed COE, and which is incorporated herein by this reference. Said email stated that said Cross-Defendants were getting ready to release the film and that they needed Terrence to sign a COE. However, the attached COE contained an overly-extensive waiver of "results and proceeds," an indemnification provision, a choice of law provision, a limitation of remedies clause, and a mandatory arbitration provision, none of which were ever previously anticipated by, negotiated with, or ever agreed upon by Cross-Complainants. Thus, Mira informed Musina that Cross-Complainants would not be signing the proposed COE.

58.     Cross-Complainants are informed and believe that, thereafter on or about March 25, 2021, Musina texted Mira and stated: "We need to be able to release the film and there are a few standard items to sign off on for everyone involved. If there is anything that you need changed please feel free to let me know." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "40"** is a true and correct copy of said text messages between Mira and Musina, which is incorporated herein by this reference. Mira responded to Musina's text stating:1) Terrence will not sign off on anything in perpetuity; 2) the proposed COE needs to reflect exactly in what context Terrence's image or footage would be used; 3) Defendants will not release any copyright, exploitation, reproduction, moral, or droit moral rights; and 4) Defendants will not surrender litigation or prosecution rights. Mira then said that Musina could only release the film upon the condition that Defendants receive the same considerations that Musina would want for himself and his family. Mira concluded that Defendants would be reserving all rights to avoid being exploited. As such, no unconditional permission was given to Cross-Defendants to commercially use and exploit Terrence's name, image, or likeness in these communications.

59.     Cross-Complainants are informed and believe that Musina then responded to Mira via email on March 30, 2021. Said email attached two COEs – one for Terrence and one for Mira – and a personal letter from Musina containing illusory promises that he would not unfairly exploit Terrence's image. Attached to the Appendix of Exhibits as **Exhibit "41"** is a true and correct copy of said March 30, 2021 email with said attachments, which are incorporated herein by this reference. Said proposed COEs failed to address any of Mira's stated concerns and continued to contain most of the same prior defects. Thus, Cross-Complainants rejected the proposed COEs, and, on April 14, 2021, Mira sent Musina a preliminary redlined version containing some suggested changes to the proposed COEs,

including extensive changes to the contingent compensation terms, changes to the additional credit terms, significant material changes to the "results and proceeds" releases, and a total re-write of the remedies provision. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "42"** is a true and correct copy of said April 14, 2021 email with the attached redlined version of said proposed COE, which are incorporated herein by this reference. Based upon said changes, MAPPS would be required to obtain both Terrence's *and* Mira's prior written consent, <u>which could be withheld or conditioned for *any* reason</u>, before MAPPS can use, reproduce, or license to others the right to use Terrence's name, likeness and biography in connection with the production, exhibition, advertising, promotion, and/or other permitted exploitation of the Picture, and/or subsidiary and ancillary rights of any nature relating thereto.

60. In any event, said proposed drafts of the COE confirm that, at all relevant times, Cross-Defendants knew or should have known that Cross-Complainants did not ever have a proper "results and proceeds" waiver from Cross-Complainants regarding the commercial use and exploitation of Terrence's name and likeness, in that said COE drafts memorialize therein: "the principal terms of the [TA] [] did not contain certain standard language **required by the distributors of the Picture**."

61. Cross-Complainants are informed and believe that Musina responded to Mira's COE redlines **by rejecting them** in an email dated April 15, 2021, and therein making a counteroffer. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "43"** is a true and correct copy of said April 15, 2021 email, which is incorporated herein by this reference. Specifically, Musina stated that Plaintiffs could not release "Triumph" without Defendants' "written approval on releasing the film," and that the "distributor is waiting" for said written release. Mira subsequently informed Musina that the counteroffer was unacceptable and that they would not release said rights until Cross-Complainants received everything that they were otherwise promised.

62. Cross-Complainants are informed and believe that, while Musina and MAPPS were stating in writing one thing to Cross-Complainants (e.g., they cannot advertise or release the film without Defendants' written consent), Plaintiffs were busy advertising "Triumph" almost exclusively based upon the marketing power of Terrence's name and likeness without Cross-Complainants' knowledge or consent, and without once seeking consulting with Cross-Complainants about the images of Terrence

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

that were used in said advertisements. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "44"** is a true and correct copy of an April 12, 2021 Tweet from the movie's Twitter account regarding "Triumph" featuring a picture of Terrence and using Terrence's name. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "45"** is a true and correct copy of a "Triumph" movie poster featuring Terrence in front of Mitte. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "46"** is a true and correct copy of a "Triumph" movie poster featuring a picture of me in front of Mitte. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "47"** is a true and correct copy of an October 2, 2019 Deadline Article regarding Triumph, featuring Terrence, available at the following link: https://deadline.com/2019/10/terrence-howard-to-star-in-triumph-with-r-j-mitte-1202750775/ ). Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "48"** is a true and correct copy of an April 15, 2021 Hollywood Reporter Article regarding Triumph titled "Terrence Howard's 'Triumph' Headed to Cinemark Theatres for Limited Run," which features Terrence, and is available at the following link: https://www.hollywoodreporter.com/movies/movie-news/terrence-howards-triumph-headed-to-cinemark-theatres-for-limited-run-4167353/ ). Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "49"** is a true and correct copy of a "Triumph" DVD Cover, featuring a picture of Terrence in front of Mitte. Said exhibits are incorporated herein by this reference.

63. Cross-Complainants are informed and believe that, at no time did any of the Cross-Defendants consult with, or seek any consultation with, any of the Cross-Complainants regarding any of the images Cross-Defendants used of Terrence's name or likeliness in either the movie "Triumph", the DVD cover for "Triumph", or in any of the advertising for "Triumph".

F. **PRIVILEGED STATEMENTS MADE IN GOOD FAITH ANTICIPATION OF LITIGATION**

64. On or about April 24, 2021, Mira sent Coffey, the writer of Triumph, an email informing him that Cross-Complainants were going to have their attorneys contact the distributor of 'Triumph" to let them know that Cross-Complainants did not sign any releases and that such was made clear to Musina. Said email further informed Coffey that, if Musina provided any release forms to any distributor or exhibitor from Cross-Complainants, such would be a forgery. Mira then stated that Cross-Complainants

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

hoped that the parties could come to an agreement that would work for everyone so that "Triumph" could properly be released. Coffey responded in an email that he was "in shock," and that he was under the impression that Musina and Clofine had worked things out with Cross-Complainants. Mira then responded to Coffey:

> "I need to make you aware of how upset and absolutely violated both Terrence and I feel about the release of the movie Triumph. Max recently reached out to us to get consent forms for the release of the movie [and] our attorneys made it clear as well as we gave from our camp that **we do not give permission to release the film with Terrence on the cover of any advertisements or as the star of this film**. We were never compensated to be exploited in the manner in which the film is being released. I want to make it clear to you that **this film is being released without the consent [of] Terrence or** I. We never agreed to it or have approved any images as well.

> I can't begin to tell you what it feels like to be used and exploited in this manner. Max has hidden behind the cerebral palsy foundation and has made himself out to be a St while he has clearly robbed us of our rights to publicity as well as **exploiting someone's name and image without the consent of anyone**. We are unbelievably upset and hope to hear a response from someone. **I have reached out to Max several times with no response**.

> I'm sorry to have to send this email to you... but I will wait for your response."

Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "50"** is a true and correct copy of said email chain between Mira and Coffey, which is incorporated herein by this reference.

65.     Realizing that they are now going to have to sue DIE, Clofine, Coffey, MAP, MAPPS, Musina and others not then known for their violations of Terrence's publicity rights, on or about April 29, 2021, Defendants paid a substantial litigation retainer to hire litigation attorneys to investigate and pursue Defendants' claims.

66.     Cross-Complainants are informed and believe that, despite Musina memorializing in writing on April 15, 2021 that "Triumph's" producers and distributors know that they cannot release "Triumph" without Cross-Complainants' express written consent, and despite the fact that Cross-Defendants all knew that Cross-Complainants never provided such written consent, on or about April 30, 2021, Cross-Defendants released and/or exhibited "Triumph" in Cinemark theaters and elsewhere, all while using Terrence's name and likeness for commercial gain. Thereafter, Defendants' attorney, in

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900, Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

anticipation of litigation, sent out a C&D letter dated May 13, 2021 to the then-known published producers and distributors of "Triumph." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "51"** is a true and correct copy of one of C&D letters. Said C&D letters expressly put the film's producers and distributors on statutory notice as required by *Civ. Code* § 3344, and demanded the total cessation of any and all distribution, advertising, promotion and/or exhibition of "Triumph" in any manner that uses Terrence's name, image and/or likeness. The C&D letters also warned that failure to comply would force Cross-Complainants to commence litigation and seek all available remedies under *Civil Code* § 3344.

67.    In response to said C&D letter, Relativity's legal counsel sent an email to Cross-Defendants Fahim and FL, then attorney for MAP, MAPPS, and DIE, declaring a material breach of said domestic distribution agreement, and providing notice that Relativity will be suspending future distribution of "Triumph" pending a resolution of said parties' dispute with Cross-Complainants. Of note, said email confirmed that: "While [MAPPS] has provided Relativity with a signed agreement between [MAP] and [Terrence]'s loanout company, the agreement does not incorporate customary results and proceeds language." Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "52"** is a true and correct copy of said email, which is incorporated herein by this reference.

68.    Cross-Complainants then engaged in settlement talks with Fahim, and spent the next several months preparing to file a lawsuit in December 2021 if the matter was not resolved before then. However, during settlement negotiations, on or about October 8, 2021, Fahim and FL preemptively filed a Complaint on behalf of MAP, MAPPS and DIE full of knowingly salacious and false information for the improper purpose of abusing this Court's process by retaliating against Cross Defendants for exercising their constitutional rights to seek redress of their grievances and sending out said C&D pre-litigation demand letters, and to otherwise extort Cross-Complainants' withdrawal of said C&D pre-litigation demand letters in order to avoid unnecessary litigation expense and otherwise embarrassing press coverage accusing Cross-Complainants of various crimes of moral turpitude. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "53"** is a true and correct copy of the conformed copy of Plaintiffs' Complaint, which is incorporated herein as part of this Court's record.

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

69.     Thereafter, Fahim and FL further abused this Court's process by filing a First Amended Complaint ("FAC") on December 14, 2021 adding Mitte to the list of Plaintiffs therein despite the fact that Mitte had no legal standing to sue Cross-Complainants. Cross-Complainants are informed and believe that Cross-Defendants Fahim, FL, MAP, MAPPS and DIE all knew that Mitte had no legal standing to sue Cross-Defendants, but otherwise added Mitte to this lawsuit solely for the improper purposes of attempting to fabricate a representation conflict to have Cross-Complainants' attorneys removed from this lawsuit due to the fact that said attorneys previous represented Mitte in a prior unrelated landlord-tenant matter in 2016. Attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "54"** is a true and correct copy of the conformed copy of Plaintiffs' FAC, which is incorporated herein as part of this Court's record.

70.     Cross-Complainants are informed and believe that, as additional confirmation that said Complaint and FAC were filed to abuse the Court's process for improper purposes, both the Complaint and FAC materially and falsely claim that all relevant parties actually agreed to the terms in said redlined and unsigned COE and then confoundingly demand this Court enforce the terms of said unsigned redlined COE that Musina confirmed in writing through this April 15, 2021 counter offer email was – as a matter of law[7] – rejected. The absurdity of making such a claim is also belied by the fact that said COE remains as a "redline" version. The fact that said COE remains as a "redline" version establishes that the subject changes in said draft COE were never accepted by Cross-Defendants, put into a final form, and

---

[7] A qualified acceptance or counteroffer is a new proposal, and does not constitute acceptance of an offer. (See *Civil Code* § 1585, which provides, "An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, and which will conclude the person accepting. A qualified acceptance is a new proposal.") The qualified acceptance constitutes a rejection of the original offer and the making of a counteroffer to the original offeror. See *Panagotacos v. Bank of Am.* (1998) 60 Cal.App.4th 851, 855–856; *Landberg v. Landberg* (1972) 24 Cal.App.3d 742, 750. "[T]erms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract; and a qualified acceptance amounts to a new proposal or counteroffer putting an end to the original offer." (*Panagotacos v. Bank of America* (1998) 60 Cal.App.4th 851, 855-856. The original offer terminates as soon as the rejection (i.e., counteroffer) is communicated to the offeror: "It is hornbook law that an unequivocal rejection by an offeree, communicated to the offeror, terminates the offer; even if the offeror does no further act, the offeree cannot later purport to accept the offer and thereby create enforceable contractual rights against the offeror." *Beverly Way Associates v. Barham* (1990) 226 Cal.App.3d 49, 55.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

then submitted for the parties thereto to execute.  As such, any claim that said COE agreement as amended was ever submitted to Cross-Complainants to execute is knowingly blatantly false. Further, glaringly on its face, said redlined COE unambiguously and expressly prohibits Cross-Defendants from using Terrence's name or likeness in connection with the production, exhibition, advertising, promotion, and/or other permitted exploitation of "Triumph" without obtaining ***both* Terrence's and Mira's *prior written consent***, which can be withheld or conditioned by Cross-Complainants for any reason. As such, had the relevant parties actually agreed to be bound by and follow the terms of said redlined COE, all of Cross-Complainants' conduct alleged in the aforementioned Complaint and FAC would therefore be expressly authorized, which would in turn legitimize all of Cross-Complainants' conduct alleged in both the Complaint and FAC. See Exhibits 53 & 54.

71.     Cross-Complainants are informed and believe that, as further confirmation Fahim, FL, MAP, MAPPS and DIE filed the Complaint and FAC for an improper purpose, Fahim, FL, MAP, MAPPS and DIE filed a Motion for Preliminary Injunction with this Court on or about January 31, 2022 that was in large part based upon knowingly false declarations submitted by Clofine and Musina under the penalty of perjury.

72.     By way of example, and not limitation, said Motion for Preliminary Injunction contained a sworn declaration by Clofine that falsely stated under penalty of perjury in Paragraph 9 of his declaration the following:

"The Producers performed all duties required of them under the Triumph Agreement and the COE."

First, as stated above, it is a knowingly false statement under penalty of perjury to claim that the Producers performed all duties required of them under the TA and the COE.  At a minimum, Clofine knows full well that the Producers never provided Cross-Complainants invitations to any movie premieres or film festivals or a copy of the DVD of "Triumph,"  nor did they ever negotiate in any manner the remaining terms of the TA pursuant to TA Section 12; provide and/or negotiate a long form acting services agreement between Terrence and the production company for "Triumph" pursuant to TA Section 12; and/or provide and/or negotiate, pursuant to Musina's February 26, 2020 email, "to get a final agreement in place for [Cross-Complainants'] backend profits [on]Triumph." Further, the

Producers indisputably never complied with the terms of the redlines COE because such would have required the Producers of "Triumph" to have obtained actual written consent by Cross-Complainants to use Terrence's image, name and likeness prior to exploiting or exhibiting or advertising "Triumph."

73.     Additionally, by way of further example, and not limitation, said Motion for Preliminary Injunction contained a sworn declaration by Musina that falsely stated under penalty of perjury in Paragraph 7 therein:

> "The Producers and I had been attempting to secure Mr. Howard's signature regarding the Certificate of Engagement ("COE") after finalizing it with Mr. Howard. The COE confirmed, amongst other things, that Mr. Howard would receive no fixed compensation and be compensated by the movie's revenues, and that Mr. Howard would receive a "starring actor" credit in the main title. After Mr. Howard's unexpected demand for $75,000.00, we continued to attempt to obtain his signature, but he refused to sign the COE. While the COE was not holographically signed by either Map Production or the Defendants, the COE and its terms were all-but finalized. Defendants had acted in accordance with their promises in the COE, and Plaintiffs acted in reliance with those promises."

First, as stated above, it is a knowingly false statement under penalty of perjury to claim that anything in said COE was finalized with Terrence, as all such negotiations were actually with Mira as confirmed by the communications identified above. Second the terms of the redlined COE were not all-but finalized by the mere fact that said COE remains a "redline" version and that Musina rejected said redlines as a matter of law through his April 15, 2021 counteroffer. Third, although it is true that Cross-Complainants acted in accordance with the terms of the redlined COE by withholding written consent in their sole and absolute discretion, it is a blatantly false statement under penalty of perjury that the Producers acted in reliance upon the terms stated therein in that they advertised, premiered, exploited, released and exhibited "Triumph" without first obtaining Cross-Complainants' written consent and then sued Cross-Complainants for conducting themselves in accordance with the terms of said redlined COE.

74.     Cross-Complainants are informed and believe that, as further confirmation that said Complaint and FAC were filed to abuse the Court's process for improper purposes, this Cout granted in part Cross-Complainants' Anti-SLAPP Motion on or about April 1, 2022 and sustained Cross-Complainants' Demurrer on June 2, 2022 in part as to the claims made in said FAC. With regard to the Anti-SLAPP, the court struck the following: All C&D related claims for all of the named plaintiffs therein as to The First Cause of Action for Breach of Contract and The Second Cause of Action for

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

1
2
3
4
5
6
7
8
9

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Breach of the Implied Covenant of Good Faith and Fair Dealing in the FAC; the entirety of The Third Cause of Action for Intentional Interference with Contractual Relations The Fourth Cause of Action for Negligent Interference with Contractual Relations, The Fifth Cause of Action for Intentional Interference with Prospective Economic Advantage, and The Sixth Cause of Action for Negligent Interference with Prospective Economic Advantage in the FAC as to all Plaintiffs therein; and All C&D related claims for all of the named plaintiffs therein as to The Seventh Cause of Action for Fraudulent Inducement, The Eight Cause of Action for Misrepresentation, and The Ninth Cause of Action for Declaratory Relief. A true and correct copy of the Notice of Ruling on said Anti-SLAPP Motion is attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "55"**, and is incorporated herein by this reference.

75.     As to said Sustained Demurrer, the Court dismissed *all* of Mitte's and MAPPS remaining causes of action in the FAC with leave to amend for lack of standing. Additionally, the Court dismissed DIE's and MAPG's First and Second Causes of Action against Terrence and Mira with leave to amend. Thereafter, Mitte, DIE, MAPG, and MAPPS failed to file a Second Amended Complaint.  As such, said dismissals became permanent. A true and correct copy of the Notice of Ruling on said Anti-SLAPP Motion is attached to the Appendix of Exhibits to the Cross-Complaint as **Exhibit "55"**, and is incorporated herein by this reference.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### For Breach of Contract

#### (UBI against DIE AND MAPG and ROES 1-10)

76.     Cross-Complainants repeat and reallege paragraphs 1 through 75 of the Cross-Complaint as if fully set forth herein.

77.     Cross-Complainants are informed and believe that, to the extent that Terrence is deemed to have possessed the authority to bind UBI to the TA, then in or about April 2019, the TA was formed between UBI on one side, and DIE, MAPG and ROES 1-10 on the other (DIE, MAPG and ROES 1-10 shall hereinafter be referred to as the "Contract Cross-Defendants").

78.      Cross-Complainants are informed and believe that UBI has performed all of the terms of

the TA, except those terms that UBI has been prevented from performing due to Contract Defendants' conduct as alleged herein.

79.    Cross-Complainants are informed and believe that Contract Cross-Defendants have breached the TA by engaging in the conduct alleged above.  By way of example, and not limitation, failed: To arrange for "First class transportation" pursuant to TA section 12.a at all points of travel identified in the TA – including to premieres and festivals and at all times Terrence was working on "Triumph"; To request and/or offer Cross-Complainants the opportunity to provide meaningful consultation over all photos and likeness of Terrence pursuant to TA section 12.b.i; To request and/or offer Cross-Complainants the opportunity to provide reasonable approval over material changes to Terrence's role pursuant to TA section 12.b.ii; To provide a DVD copy of the Picture pursuant to TA section 12.e; To inform Cross-Complainants about, and to provide two invitations to, all major premieres and major film festivals at which "Triumph" was screening pursuant to TA Section 12.f; To negotiate in any manner the remaining terms of the TA pursuant to TA Section 12, including all required terms involving SAG obligations and compliance and the terms upon which UBI would agree to a waiver of "Results and Proceeds"; To provide and/or negotiate a long form acting services agreement between Terrence and the production company for "Triumph" pursuant to TA Section 12 that would include, amongst other customary long-form terms, all required terms involving SAG obligations and compliance and the terms upon which UBI would agree to a waiver of "Results and Proceeds"; and To provide and/or negotiate, pursuant to Musina's February 26, 2020 email, "to get a final agreement in place for [Cross-Complainants'] backend profits [on]Triumph."

80.    Cross-Complainants are informed and believe that the Covenant of Good Faith and Fair Dealing is implied, as a matter of law, in every contract entered into in the State of California.  As such, Contract Cross-Defendants not only have a duty to not interfere with UBI receiving the benefit of its bargain under the TA, but they also have a duty thereunder to do everything reasonably in their power to assure that UBI receives the benefit of its bargain.

81.    Cross-Complainants are informed and believe that Contract Cross-Defendants breached the covenant of good faith and fair dealing by failing to negotiate and complete the TA and the anticipated long-form agreement to include industry customary terms and provisions that otherwise

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

protect UBI and Cross-Complainants from improper exploitation, including the industry customary terms involving the parties' SAG obligations and protections and the protections afforded to Cross-Complainants through a valid and customary waiver of "Results and Proceeds" that prevents Contract Defendants or their agents and/or assigns from wrongfully exploiting Terrence's image, likeness and/or name.

82.    As a direct and proximate result of Contract Cross-Defendants' breaches of the TA, UBI has been damaged in an amount to be proven at trial, as such damages continue to accrue.  However, Cross-Complainants are informed and believe that such damages are otherwise expected to be in excess of $650,000.    Cross-Complainants will amend this Cross-Complaint once such damages are fully ascertained.

### SECOND CAUSE OF ACTION

### Intentional Misrepresentation of Material Fact

### (UBI Against Clofine, DIE, Musina, MAPG and ROES 11-20)

83.    Cross-Complainants repeat and reallege paragraphs 1 through 82 of the Cross-Complaint as if fully set forth herein.

84.    Cross-Complainants are informed and believe that, in order to induce UBI to enter into the TA and to provide Terrence's acting service in the film "Triumph",  Cross-Defendants Clofine on behalf of DIE, and Musina and behalf of MAPG, and ROES 11-20 (Clofine, DIE, Musina, MAPG, and ROES 11-20 are hereinafter collectively referred to as the "Fraud Cross-Defendants") falsely, knowingly, and deceitfully made various representations to Cross-Complainants that they knew or should have known were false, or that they never intended to perform. Said representations were misrepresentations of material fact. At the time the Fraud Cross-Defendants made the representations, the representations were false, and were then and there known to be false by the Fraud Cross-Defendants in that Fraud Cross-Defendants intended to induce Cross-Complainants' reliance, and did induce Cross-Complainants' reasonable reliance upon such representations to cause UBI to enter into the TA.

85.    Cross-Complainants are informed and believe that such misrepresentations of material fact include, but are not limited to, the following:

a.    As stated above, Clofine on behalf of DIE informed Cross-Complainants orally that

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

1   "Triumph" would be a SAG compliant production;

2   b.   As stated above, Clofine on behalf of DIE informed Cross-Complainants orally that, in

3       exchange for UBI agreeing to the terms of compensation in the TA, Clofine and DIE

4       would hire UBI and Mira to provide production services on "Triumph" and consult on

5       other projects for the advanced payment of $150,000;

6   c.   As stated above, Clofine on behalf of DIE informed Cross-Complainants orally that, in

7       exchange for UBI providing Terrence's services on "Triumph" pursuant to the TA,

8       Clofine and DIE would provide UBI with a legal tax credit worth $500,000;

9   d.   As stated above, Clofine on behalf of DIE, and Musina on behalf of MAPG, informed

10      Cross-Complainants orally and in writing that in exchange for UBI providing Terrence's

11      services on "Triumph" pursuant to the TA, DIE and MAPG would provide UBI the

12      opportunity to be meaningful consulted about over all photos and likeness of Terrence;

13  e.   As stated above, Clofine on behalf of DIE, and Musina on behalf of MAPG, informed

14      Cross-Complainants orally and in writing that in exchange for UBI providing Terrence's

15      services on "Triumph" pursuant to the TA, DIE and MAPG would provide UBI approval

16      over material changes to Terrence's role;

17  f.   As stated above, Clofine on behalf of DIE, and Musina on behalf of MAPG, informed

18      Cross-Complainants orally and in writing that in exchange for UBI providing Terrence's

19      services on "Triumph" pursuant to the TA, DIE and MAPG would negotiate in good faith

20      the remaining industry customary terms of the TA pursuant, which include warranties of

21      SAG compliance and "Results and Proceeds" waivers that limit the use Terrence's name,

22      image and/or likeness;

23  g.   As stated above, Clofine on behalf of DIE, and Musina on behalf of MAPG, informed

24      Cross-Complainants orally that and in writing that in exchange for UBI providing

25      Terrence's services on "Triumph" pursuant to the TA, DIE and MAPG would provide

26      and/or negotiate a long form acting services agreement between Terrence and the

27      production company for "Triumph" that would include, amongst other customary long-

28      form terms, all required terms involving SAG obligations and compliance and a waiver

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

of "Results and Proceeds" that would limit the manner, method and extent to which Terrence's image, name, and or likeness could be used in conjunction with the movie "Triumph".

86.     Cross-Complainants are informed and believe that, to the extent that any of the representations were promissory in nature, the Fraud Cross-Defendants made said representations without the intention of performing same. To the extent that the representations made by the Fraud Cross-Defendants constituted a statement of opinion, they were without a good faith belief in the truth thereof or the facts supporting said opinion.

87.     Cross-Complainants are informed and believe that all of the Fraud Cross-Defendants' representations were made with the intent that Cross-Complainants rely on same. Cross-Complainants justifiably relied on the representations and/or failures to disclose of the Fraud Cross-Defendants and in so doing changed their position to their detriment, including but limited to not seeking and/or declining opportunities, contracts or commitments that would conflict with the Terrence providing acting services pursuant to the TA.

88.     Cross-Complainants are informed and believe that, but for the misrepresentations and failures to disclose the true facts, Cross-Complainants, and especially UBI, would not have entered into the TA or agreed to attach Terrence to "Triumph." At all times referred to herein, the Fraud Cross-Defendants had knowledge of said acts and misrepresentations of its agents and/or representatives and authorized and ratified the acts alleged hereinabove.

89.     Cross-Complainants are informed and believe that, as a direct and proximate result of the aforementioned misrepresentations and/or failures to disclose, Cross-Claimants have been damaged in an amount in excess of the jurisdictional minimum according to proof at trial, but is otherwise expected to exceed $650,000.

90.     Cross-Complainants are informed and believe that the conduct of Fraud Cross-Defendants was wanton, willful, deliberate, and in conscious disregard of UBI's rights, was undertaken with the intent to cause UBI injury, and constitutes fraud and malice, express and implied. Accordingly, UBI is entitled to an award of punitive damages by way of punishment and example against the Fraud Cross-Defendants in an amount to be determined by the trier of fact.

**THIRD CAUSE OF ACTION**

**Negligent Concealment of Material Fact**

**(Cross-Complainants Against Clofine, DIE, Musina, MAPG, and ROES 21-30)**

91.     Cross-Complainants repeat and reallege paragraphs 1 through 90 of the Cross-Complaint as if fully set forth herein.

92.     Cross-Complainants are informed and believe that Cross-Defendants Clofine on behalf of DIE, Musina and behalf of MAPG, and ROES 21-30 (Clofine, DIE, Musina, MAPG, and ROES 21-30 are hereinafter collectively referred to as the "Concealment Cross-Defendants") are producers in the entertainment industry that produce feature films. As such, Cross-Complainants are informed and believe that Concealment Cross-Defendants owe the actors and their loan out companies a duty to disclose whether their production of a feature film is or will be SAG compliant.

93.     As stated above, Terrence is a member of SAG. As such, Terrence is forbidden from providing acting services on productions that are not and/or will not become SAG compliant. If Terrence is caught providing acting services to a production that is not SAG compliant, Terrence faces penalties pursuant to union rules, which may include the loss of benefits and his expulsion from SAG.

94.     Cross-Complainants are informed and believe that, in order to induce UBI to provide Terrence's acting services for the film "Triumph", Concealment Cross-Defendants failed to disclose that the "Triumph" production was not SAG compliant and/or that the producers of "Triumph" had no intent on making "Triumph" SAG compliant by way of obtaining a SAG waiver or otherwise.

95.     Cross-Complainants are informed and believe that, had the Concealment Cross-Defendants disclosed the truth that the producers of "Triumph" had no intention of making said production SAG compliant, Cross-Complainants would not have agreed to have Terrence provide any acting services for the movie "Triumph". Instead, Concealment Cross-Defendants allowed Cross-Complainants to believe that said production was and/or will be SAG Compliant and that Concealment Cross-Defendants could properly contract with UBI and Terrence for Terrence's acting services without putting Terence into conflict with his prior obligations to SAG.

96.     As a direct and proximate result of the foregoing conduct of the Concealment Cross-Defendants, Cross-Complainants have been damaged in an amount to be proved at trial.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

**FOURTH CAUSE OF ACTION**

**Violation of Civil Code § 3344**

**(UBI and Terrence against MAPG, MAPPS, DIE, Clofine, Musina, Coffey, Relativity, T&D, Konney, and ROES 31-80)**

97.     Cross-Complainants repeat and reallege paragraphs 1 through 96 of the Cross-Complaint as if fully set forth herein.

98.     Cross-Complainants are informed and believe that, as alleged herein, beginning in or about November 2020, Cross-Defendants MAPG, MAPPS, DIE, Clofine, Musina, Coffey, Relativity, T&D, Konney and ROES 31-80 (Cross-Defendants MAPG, MAPPS, DIE, Clofine, Musina, Coffey, Relativity, T&D, Konney and ROES 31-80 are hereinafter collectively referred to as the "Unauthorized Cross-Defendants"), without Cross-Complainants' consent, knowingly used Terrence's, name, image, and/or likeness, in which Terrence is readily identifiable, in the movie "Triumph", as well as on advertising and for purposes of advertising, selling and soliciting purchases of, products, merchandise, goods, services, and related sales, promotions and advertising materials. The appropriation of Terrence's name or likeness was to the Unauthorized Cross-Defendants' advantage, commercial or otherwise, including but not limited to the Unauthorized Defendants' pecuniary gain and profit.

99.     Cross-Complainants are informed and believe that the Unauthorized Cross-Defendants knowingly used Terrence's likeness without his written consent and without first obtaining a "Results and Proceeds" waiver. There was a direct connection between the Unauthorized Cross-Defendants' use of Terrence's likeness and a commercial purpose. The appropriation and use was unauthorized and without Cross-Complainants' consent.

100.     Cross-Complainants are informed and believe that the appropriation and unauthorized use was for the Unauthorized Cross-Defendants' advantage in that it was for the Unauthorized Cross-Defendants' pecuniary gain and profit, and to UBI's and Terrence's damages. Cross-Complainants are entitled to all statutory remedies provided in *Civil Code* § 3344, including an award of actual damages suffered as a result of the unauthorized use and any and all profits from said unauthorized use.

101.     Cross-Complainants are informed and believe that, in addition to the statutory remedy permitted pursuant to *Civil Code* § 3344, UBI and Terrence are also permitted an award of punitive

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

damages based on the Unauthorized Cross-Defendants' willful and conscious disregard of Terrence's rights and their unauthorized use of Terrence's name, image and/or likeness without his consent or authorization knowing that they did not have Cross-Complainants' authorization and consent for the use of Terrence's name, image, and/or likeness and that no lawful contract had been entered into authorizing such use had been negotiated or entered into, and that the redlined COE did not constitute a valid contract and was insufficient to provide legal and proper consent or authorization for the use of Terrence's name, image, and/or likeness, all of which also warrants the award of punitive damages. However, to the extent that said redlined COE does constitute a valid contract between the parties thereto, said redlined COE expressly forbids the Unauthorized Cross-Defendants from using Terrence's images, name and/or likeness for any purpose without all of Cross-Complainants' express written authorization, which Unauthorized Cross-Defendants did not and do not have.

102.    UBI and Terrence have also incurred and continues to incur attorneys' fees, costs and expenses and will continue to incur these fees, costs and expenses, and are entitled to a recovery of these fees, costs and expenses pursuant to *Civil Code* § 3344.

## FIFTH CAUSE OF ACTION

### Accounting

### (UBI and Terrence against MAP, MAPPS, DIE, Clofine, Musina, Coffey, Relativity, T&D, Konney, and ROES 31-80)

103.    Cross-Complainants repeat and reallege paragraphs 1 through 102 of the Cross-Complaint as if fully set forth herein.

104.    Cross-Complainants are informed and believe that the amount of money due from the Unauthorized Cross-Defendants to UBI and Terrence is unknown to Cross-Complainants and cannot be ascertained without an accounting of the Unauthorized Cross-Defendants' business receipts. To be certain, Cross-Complainants are informed and believe that some or all of the Unauthorized Cross-Defendants are continuing to this day, even while litigation is pending, to exploit Terrence's image, name and/or likeness for commercial gain with full knowledge that they have no authorization or consent to do so.

105.    Cross-Complainants are informed and believe that the amount due to UBI and Terrence

exceeds the jurisdictional minimum.

106.     Cross-Complainants are informed and believe that Cross-Complainants have demanded an accounting of the aforementioned receipts of the business from the Unauthorized Cross-Defendants or their representatives, and payment of the amount found due, but the Unauthorized Cross-Defendants and/or their representatives have failed and refused, and continue to fail and refuse, to render such an account and pay such sum.

107.     Cross-Complainants respectfully request that this Court mandate a full and complete accounting of all the Accounting Cross-Defendants' revenues, costs and profit in connection with the "Triumph" production.

108.     As a matter of law, UBI and Terrence are also entitled to prejudgment interest at the legal rate of any sums found to be due UBI and Terrence based upon the findings of said accounting.

### SIXTH CAUSE OF ACTION

### Abuse of Process

### (UBI, Terrence, and Mira against FL, Farivar, MAPG, MAPPS, and ROES 81-100)

109.     Cross-Complainants repeat and reallege paragraph 1 through 108 of the Cross-Complaint as if fully set forth herein.

110.     Cross-Complainants are informed and believe that, under California law, the two essential elements of a cause of action for abuse of process have been stated to be an ulterior purpose and a willful act in the use of process not proper in the regular conduct of the proceeding. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, that constitutes the tort. *Templeton Feed & Grain v. Ralston Purina Co*., 69 Cal.2d 461, 466 (1968); *Spellens v. Spellens*, 49 Cal.2d 210, 232–233 (1957); see *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc*., 42 Cal.3d 1157, 1168–1169 (1986).

111.     Cross-Complainants are informed and believe that Cross-Defendants FL, Farivar, MAPG, MAPPS, and ROES 81-100 (Cross-Defendants FL, Farivar, MAPG, MAPPS, and ROES 81-

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

100 are hereinafter collectively referred to as the "Abuse Cross-Defendants"), by knowingly and intentionally filing the instant action containing unlawful claims to harass Cross-Complainants, and through the threat of and actual public disclosure of salacious and false information, coerce an inequitable settlement through the waiver of constitutional rights to seek redress of grievances, and force them to incur excessive litigation costs and expenses to respond to unlawful claims in a lawsuit by vexatiously making said lawsuit costly for Cross-Complainants to defend themselves and protect their rights.

112.    Cross-Complainants are informed and believe that the Abuse Cross-Defendants also used the instant action as a platform from which to publish to the media disparaging, salacious and false material regarding Cross-Complainants in order to embarrass and harm Cross-Complainants, including falsely claiming that Cross-Complainants engaged in fraud, extortion and other crimes of moral turpitude.

113.    Cross-Complainants are informed and believe that the Abuse Cross-Defendants further abused the Court's process in this action by using such judicial proceeding to try and extort Cross-Complainants to surrender Terrence's and UBI's property rights to the Unauthorized Cross-Defendants and to which they are not legally entitled, and in order to embarrass Terrence and ruin his career and reputation if he does not comply. The ulterior purpose and motivation of the Abuse Cross-Defendants in so misusing the process in the above-described manner was to obtain a valuable property right from Cross-Complainants in this Action, all to which Cross-Defendants were never entitled as a matter of law. To be certain, as stated above, Cross-Complainants are informed and believe that Abuse Cross-Defendants suborned and/or proffered perjured testimony that they knew or should have known was false for the improper purposes of abusing this Court's processes to force Cross-Complainants to have their constitutional and/or property rights taken away from them.  Additionally, Abuse Cross-Defendants abused this Court's processes for the improper purpose of unnecessarily multiplying the cost of litigation to punish Cross-Complainants for not surrendering or waiving their constitutional and/or protected property rights by vexatiously prosecuting meritless and unlawful claims – most of which have now been permanently dismissed by this Court.

114.    As a proximate result of the actions of the Abuse Cross-Defendants, Cross-Complainants

have been damaged generally, including financially in having to spend hundreds of thousands of dollars to defend this action and to obtain the permanent dismissal of certain parties and certain unlawful claims.

115.    At all times mentioned herein, the Abuse Cross-Defendants acted willfully with the wrongful intention of injuring Cross-Complainants and from an improper or evil motive amounting to malice in that the Abuse Cross-Defendants intentionally and outrageously, and with total disregard to Cross-Complainants' rights, committed the crime of attempted extortion to force Cross-Complainants to choose between public humiliation and financial ruin or succumb to the Abuse Cross-Defendants' improper demands to surrender constitutional and/or protected valuable property rights.  Thus, under California law, Cross-Complainants are entitled to an award of punitive damages to deter such behavior in the future.

## SEVENTH CAUSE OF ACTION
## DECLARATORY RELIEF
### (UBI, against MAPG, DIE and ROES 1-10)

116.    Cross-Complainants hereby incorporate by reference each and every allegation contained in the preceding paragraphs 1 through 115 of this Cross-Complaint as though fully set forth herein.

117.    An actual controversy has arisen and now exists between UBI and Contract Cross-Defendants concerning their respective rights with regard to the TA.

118.    Cross-Complainants desire a judicial determination that: 1) The TA never formed due to the fact that Terrence did not have the legal authority to bind UBI;  2) if the TA was formed, that it was void ab initio as it was procured through fraud for the reasons stated above; 3) that Terrence did not and cannot impliedly agree to consent to the Contract Defendants using his image, name, or likeness associated with the movie "Triumph" absent said production being SAG compliant; and 4) to the extent that Cross-Complainants have yet to provide actual consent, to allow Contract Defendants to use Terrence's image, name, or likeness for commercial gain absent an express written "Results and Proceeds" waiver that contains mutually acceptable terms to the parties to the TA.

119.    Without a judicial determination, it has become clear that the Contract Cross-Defendants, will continue to use Terrence's image, name, and/or likeness in association without his or UBI's consent and in violation of Terrence's SAG obligations.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

**EIGHTH CAUSE OF ACTION**

**Violation of Business & Professions Code § 17200, et seq.**

**(UBI and Terrence against MAP, MAPPS, DIE, Clofine, Musina, Coffey, Relativity,**

**T&D, Konney, and ROES 31-80)**

120.    Cross-Complainants hereby incorporate by reference each and every allegation contained in the preceding paragraphs 1 through 119 of this Cross-Complaint as though fully set forth herein.

121.    By violating the statutes and regulations as alleged herein, Unauthorized Cross-Defendants' acts and conduct constitutes unlawful business practices under Business and Professions Code §§ 17200, et seq.

122.    Cross-Defendants' violations of the statutes and regulations as alleged herein are business practices done repeatedly over a significant period of time throughout California and from California, and in a systematic manner to the detriment of UBI and Terrance.

123.    The harm to UBI and Terrence outweighs any utility of Unauthorized Cross-Defendants' policies and practices, as alleged herein, and consequently constitute unfair business acts or practices within the meaning of Business and Professions Code §§ 17200 et seq.

124.    As a direct and proximate result of the aforementioned acts by Cross-Defendants, Cross-Defendants wrongfully retained and continue to retain funds which resulted from their commercial and unlawful use of Terrence's image, name and likeness, and other unlawful, unfair and fraudulent business acts and practices as alleged herein, according to proof.

125.    The unfair, unlawful and fraudulent business acts and practices described herein present a continuing threat and source of injury and damage to UBI and Terrence. Cross-Complainants are informed and believe that Unauthorized Cross-Defendants have engaged in such practices over a number of years and have failed to indicate, in any way, that they plan to cease such activities any time in the future absent an injunction making them stop their unlawful and unfair conduct as alleged herein.

126.    Within four years preceding the filing of this action, UBI and Terrence have lost property rights and request restitution of all monies and profits to be disgorged from Unauthorized Cross-Defendants derived from the exploitation of said property rights in an amount according to proof at time of trial.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

127.    Pursuant to Business and Professions Code §§ 17200 et seq., and pursuant to the equitable powers of this Court, Unauthorized Cross-Defendants should be preliminarily and permanently enjoined from their unfair, unlawful and fraudulent business acts and practices. To be certain, neither UBI nor Terrence have an adequate remedy at law, in that the harm and the damage that they continue to suffer as a result of Unauthorized Cross-Defendants' conduct alleged herein is ongoing and potentially never ending absent an injunction from this Court preventing said conduct from continuing.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainants pray for judgment as follows:

## FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT:

1. For general, incidental and consequential damages in a sum to be proven at trial;
2. Prejudgment interest at the maximum legal rate;
3. For attorneys' fees;
4. For costs of suit incurred herein and as permitted by law; and
5. For such other and further relief as the Court may deem proper.

## SECOND CAUSE OF ACTION FOR INTENTIONAL MISREPRESENTATION OF MATERIAL FACT:

1. For general, incidental and consequential damages in a sum to be proven at trial;
2. Prejudgment interest at the maximum legal rate;
3. For punitive damages in an amount high enough to deter such conduct in the future;
4. For attorneys' fees;
5. For costs of suit incurred herein and as permitted by law; and
6. For such other and further relief as the Court may deem proper.

## THIRD CAUSE OF ACTION FOR NEGLIGENT CONCEALMENT OF MATERIAL FACT:

1. For general, incidental and consequential damages in a sum to be proven at trial;
2. Prejudgment interest at the maximum legal rate;
3. For punitive damages in an amount high enough to deter such conduct in the future;
4. For attorneys' fees;
5. For costs of suit incurred herein and as permitted by law; and

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

6.   For such other and further relief as the Court may deem proper.

**FOURTH CAUSE OF ACTION FOR VIOLATION OF CIVIL CODE § 3344:**

1.   For statutory damages pursuant to Civil Code § 3344, including an award of actual damages suffered as a result of the unauthorized use and any and all profits from said unauthorized use;

2.    declaring that Cross-Defendants disgorge all profits received from Cross-Complainants to avoid unjust enrichment;

3.   For an order imposing a constructive trust upon Cross-Defendants to hold in trust all moneys paid by Cross-Complainants to Cross-Defendants;

4.   Prejudgment interest at the maximum legal rate;

5.   For attorneys' fees;

6.   For costs of suit herein incurred; and

7.   For such other and further relief as the Court may deem proper.

**FIFTH CAUSE OF ACTION FOR ACCOUNTING:**

1.   For a full and complete accounting of all Cross-Defendants' revenues, costs and profit in connection with the Triumph movie;

2.   Prejudgment interest at the maximum legal rate;

3.   For attorneys' fees;

**SIXTH CAUSE OF ACTION FOR ABUSE OF PROCESS:**

1.   For general, incidental and consequential damages in a sum to be proven at trial;

2.   Prejudgment interest at the maximum legal rate;

3.   For punitive damages in an amount high enough to deter such conduct in the future;

4.   For costs of suit incurred herein and as permitted by law; and

5.   For such other and further relief as the Court may deem proper.

**SEVENTH CAUSE OF ACTION FOR DECLARATORY RELIEF:**

1.   For a judicial determination as to Cross-Complainants' rights;

2.   For costs of suit incurred herein and as permitted by law; and

3.   For such other and further relief as the Court may deem proper.

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900 Los Angeles, CA 90067
Tel.: 310.446.9900 • Fax: 310.446.9909

**EIGHTH CAUSE OF ACTION FOR BREACH OF BUSINESS AND PROFESSIONS CODE § 17200:**

1. For an order from this Court enjoining Cross-Defendants from their unlawful conduct, forcing the restitution and disgorgement of all profits;

2. For costs of suit incurred herein; and

3. For such other relief as the Court may deem proper.

Dated: July 22, 2022          **Jacobson, Russell, Saltz, Nassim & De Le Torre, LLP.**


_____
Michael J. Saltz, Esq.
Attorneys for Cross-Complainants


**DEMAND FOR JURY TRIAL**

Cross-Complainants demand a jury trial of their claims to the extent authorized by law.

Dated: July 22, 2022          **Jacobson, Russell, Saltz, Nassim & De Le Torre, LLP.**


_____
Michael J. Saltz, Esq.
Attorneys for Cross-Complainants

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909

## PROOF OF SERVICE

My business address is 1880 Century Park East, Suite 900, Los Angeles, California 90067. I am employed in the County of Los Angeles where this service occurs. I am over the age of 18 and am not a party to the within action. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I enclosed a(n) ☒ true copy ☐ original of the following document(s) described as:

## CROSS-COMPLAINT

☐ (VIA MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California addressed as set forth below;

☐ (VIA OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed as set forth below;

☒ (VIA ELECTRONIC MAIL) I caused such document(s) to be sent electronically as a .pdf file(s) to the electronic mail address set forth below;

☐ (VIA PERSONAL DELIVERY) I caused such envelope(s) to be given to a personal messenger service, to be hand delivered to the address as set forth below;

Fahim Farivar
fahim@farivarlaw.com
Brian Ning
brian@farivarlaw.com
Catherine Y. Jung
catherine@farivarlaw.com
Gabriell Barkhordar
Gabriell@Farivarlaw.com
FARIVAR LAW FIRM, APC
18321 Ventura Blvd., Suite 750
Tarzana, California 91356

Executed on July 22, 2022 at Los Angeles, California.

☒ (State) I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

_____/S/_____
Elana R. Levine

Case No.: 21STCV37225
File No.: 5.452.001                                1

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP
1880 Century Park East, Suite 900  Los Angeles, CA  90067
Tel.: 310.446.9900 • Fax: 310.446.9909